**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MALIBU MEDIA, LLC,                         *

      Plaintiff,                       *

v.                                          *      CASE NO. 1:13-cv-03438-ELH

JOHN DOE subscriber assigned IP address     *
98.218.21.63,
                                            *
      Defendant.                      *

                                            *

_____

**MOTION TO QUASH SUBPOENA**
**OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER**
**AND FOR COSTS AND ATTORNEY'S FEES**

    Defendant John Doe subscriber assigned IP address 98.218.21.63 ("John Doe"), by and

through his attorneys, Anne T. McKenna and Silverman|Thompson|Slutkin|White|LLC,

respectfully moves this Court, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to

quash the subpoena issued to Comcast Corporation ("Comcast") from Malibu Media, LLC, dated

November 19, 2013 ("the Subpoena"), or in the alternative, pursuant to Rule 26 of the Federal

Rules of Civil Procedure, for a protective order, and for costs and attorney's fees. In support

hereof, John Doe states as follows:

**INTRODUCTION**

    John Doe is a sixty-one year old resident of Maryland who, in early December 2013,

received a letter from his Internet Service Provider (ISP), Comcast, notifying him that he is the

subscriber assigned IP address 98.218.21.63. Attached to the letter from Comcast was a copy of

the Subpoena, the Complaint in this matter, and the November 19, 2013 Order of Judge Ellen

Hollander authorizing the third-party subpoena. A copy of the Subpoena is attached hereto as

**Exhibit A**.

John Doe is one of thousands of "John Doe" defendants sued by Plaintiff Malibu Media, LLC ("Malibu Media"). Malibu Media is generally recognized as a "copyright troll."[1] In the last few years, Malibu Media has filed over a thousand similar lawsuits all over the country. Research and press reports reveal that Malibu Media will settle the lawsuit for a nominal amount, always just slightly less than it would cost the defendant to defend against the lawsuit.[2] Defendants are eager to settle if only to make Malibu Media leave them alone because they do not want their names associated with the consumption of online pornography. Of the thousands of lawsuits Malibu Media has filed, only one has ever been taken through trial.[3]

John Doe vehemently denies the allegations in the Complaint alleging copyright infringement, as well as the other unsubstantiated defamatory factual allegations regarding consumption of pornographic materials. John Doe has engaged a computer forensic expert who has conclusively determined that none of the alleged infringing materials are on, or ever were on, John Doe's computer. John Doe rightly fears that the Complaint's false and unfounded allegations will ruin his reputation in the community and cause extreme emotional pain and suffering to his family and loved ones.

---

[1]    "Copyright troll" is a pejorative term for a party that enforces copyrights it owns for purposes of making money through litigation, in a manner considered unduly aggressive or opportunistic, generally without producing or licensing the works it owns for paid distribution. *See* Beth Hutchens, *Copyright Trolls: The Meaner Sister of Patent Trolls*, IPWatchdog, Dec. 8, 2010, http://www.ipwatchdog.com/2010/12/08/copyright-trolls-the-meaner-stepsister-of-patent-trolls/id=13695/; *see also* Shyamkrishna Balganesh, *The Uneasy Case Against Copyright Trolls*, *available at* https://www.stanford.edu/dept/law/ipsc/Paper%20PDF/Balganesh,%20Shyam%20-%20Paper.pdf.

[2]    *See, e.g.,* Techdirt, http://www.techdirt.com/blog/?company=malibu+media (last visited Feb. 5, 2014) (The obvious intention: scare people into settling early to avoid having their names attached to a federal lawsuit where the records showed a long list of explicitly named movies that someone had downloaded.); The Pietz Law Firm, *Slaying the Copyright Troll:  Help, I Got a Letter from my ISP Seeking to Subpoena My Identity Because a Copyright Troll Wants to Sue me for Copyright Infringement—What do I do?*, *available at* http://pietzlawfirm.com/slaying-the-copyright-troll-help-i-got-a-letter-from-my-isp-seeking-to-subpoena-my-identity-because-a-copyright-troll-wants-to-sue-me-for-copyright-infringement-what-do-i-do (last visited Feb. 5, 2014) (The main thing most copyright trolls are after is a nuisance-value settlement, or what some lawyers will call 'go away' money.)

[3]    *See Malibu Media, LLC v. John Doe, et al.*, 12-cv-2078, filed in the United States District Court for the Eastern District of Pennsylvania.

John Doe seeks to quash the Subpoena, or in the alternative seeks a protective order forbidding disclosure of his identity. John Doe possesses definitive proof that he did not commit the alleged copyright infringement at issue and disclosing his identity would cause unnecessary embarrassment and reputational harm. For the reasons detailed herein, this Court should quash the Subpoena in its entirety, or in the alternative enter a protective order forbidding the disclosure of John Doe's identity and contact information. Further, this Court should award John Doe the costs and attorney's fees associated with his defense of this frivolous lawsuit, including but not limited to the costs of forensic examination of John Doe's computer.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Copyright Troll Business Model

The copyright troll's business model involves a series of devices which, taken together, lead to the resulting copyright-lawsuit "factories" and incentivize the mass-litigation business model. The tools leveraged by the copyright trolls include extortionate settlement letters, the threat of statutory damages, and fear of reputational harm. The business model is highly lucrative and largely successful.[4]

The system for these lawsuits is simple and follows a basic pattern.[5] Generally, the copyright troll will file a lawsuit against any number of John Doe defendants, sometimes numbering in the thousands, identifying each of the defendants by nothing but an IP address. The

---

[4]     In an October 15, 2012 interview with *Forbes Magazine*, John Steele, an attorney for one of the traditional copyright trolls, stated that he has filed over 350 of these suits, made "a few million dollars" in settlements, and is currently suing approximately 20,000 John Does. *See* Luke S. Curran, *Copyright Trolls, Defining the Line Between Legal Ransom Letters and Defending Digital Rights: Turning Piracy Into a Business Model or Protecting Creative From Internet Lawlessness?*, 13 J. MARSHALL REV. INTELL. PROP. L. 170, 183-84 (2013) (citing Kashmir Hill, *How Porn Copyright Lawyer John Steele Has Made 'A Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'* FORBES (Oct. 15, 2012), *available at* http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/ (last visited Feb. 5, 2014)).

[5]     For a description of the copyright troll business model, *see generally* Amy Rosen, *The Big Lawsuits Keep On Coming:  An Analysis of Extortive Pornographic "Trolling Lawsuits" and Preventative Approaches*, 95 J. PAT. & TRADEMARK OFF. SOC'Y 165, 169 (2013).

copyright trolls file these cases in high volumes and sometimes joins multiple defendants in order to avoid having to pay the filing fee for each individual defendant. As of 2011, there were 200,000 John Doe defendants who had been threatened with a federal lawsuit for allegedly downloading or sharing copyright protected pornographic movies.[6]

The plaintiff copyright troll will then move the court for permission to serve a subpoena on the internet service provider. The ISP, in turn, will notify each individual account holder of the pending subpoena and give him or her around 30 days to move to quash or otherwise respond to the subpoena. Interestingly and frighteningly, the only attorney who the John Doe victim sees on any of the documents served upon him or her is the counsel for the copyright troll identified on the Complaint; in this case that Plaintiff is Malibu Media and the attorney is Jon Hoppe. If the Internet subscriber does not move to quash or otherwise respond to the subpoena, then the ISP will release the IP address holder's identification information to the copyright troll's lawyers. Once the lawyers have possession of the Doe defendants' actual identities, the lawyers start sending extortionate settlement demand letters. Despite threatening to take each defendant to trial for copyright infringement, the actual purpose of the settlement demand letter is to elicit quick and easy settlements.[7]

Because of the embarrassment, pressure, publicity, and cost associated with a pornography copyright infringement lawsuit, defendants are more convinced to settle.[8] The

---

[6]   *Id.* at 169 (citing Connecticut Watchdog, *Sued for Downloading Porn?  One Victim's Answer* (Mar. 10, 2012), *available at* http://ctwatchdog.com/finance/sued-for-downloading-porn-one-victims-answer (last visited Feb. 5, 2014)).

[7]   Preying on fear, one copyright troll's settlement demand letters contained claims that similar copyright infringement suits have led to judgments exceeding $200,000, claimed that similar cases "regularly involve over $100,000 in legal fees and costs, and stated, "your name will be forever associated with the outcome of the matter, particularly if you prevail … [and] [d]ue to the sensitive nature of this issue, and our desire to avoid unnecessary embarrassment, we will be glad to provide more detailed information about this case. Curran, 13 J. MARSHALL REV. INTELL. PROP. L. AT 184.

[8]   *See* Rosen, 95 J. PAT. & TRADEMARK OFF. SOC'Y at 171.

average settlement falls around $3,000.[9] With hundreds of thousands of defendants, copyright

trolls and lawyers alike are able to earn significant revenue.

Courts have taken notice of the questionable business model employed by known

copyright trolls such as Malibu Media. One court said that "copyright infringement suits of this

sort are baseless 'fishing expeditions' that are used solely to extort money from alleged

infringers."[10] Another court has described these settlement strategies as "unjust."[11] Judge Otis D.

Wright, II of the United States District Court for the Central District of California has written:

> Plaintiffs have outmaneuvered the legal system. They've discovered the nexus of
> antiquated copyright laws, paralyzing social stigma, and unaffordable defense
> costs. And they exploit this anomaly by accusing individuals of illegally
> downloading a single pornographic video. Then they offer to settle—for a sum
> calculated to be just below the cost of a bare-bones defense. For these individuals
> resistance is futile; most reluctantly pay rather than have their names associated
> with illegally downloading porn. So now, copyright laws originally designed to
> compensate starving artists allow, starving attorneys in this electronic-media era
> to plunder the citizenry.

*Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333-ODW, 2013 WL 1898633, at *1 (C.D. Cal. May

6, 2013) (Wright, J.) (imposing monetary and non-monetary sanctions on the plaintiff and its

attorneys).

 One reason for the courts' skepticism is that IP address location cannot be accurately

determined geographically speaking.[12] Through the use of a publicly available database, an

individual may be able to identify the "likely" location of a particular IP address; however this

information merely indicates "likelihood" of location and falls short of one hundred percent

---

[9]   *Id.*

[10]   *AF Holdings, LLC v. Does 1-162*, 11-23036-CIV, 2012 WL 488217, at *1 (S.D. Fla. Feb. 14, 2012).

[11]   *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 170 (S.D.N.Y. 2012).

[12]   Eric D. Block, *The Seedy Underbelly of Joinder and Reverse Class Actions:  The Porn Industry's Crusade
      Against Digital Piracy and Its Interplay With Rule 11 Sanctions*, 37 S. ILL. U. L.J. 419, 420 (2013) (citing *Sony
      Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567 (S.D.N.Y. 2004)).

accuracy.[13] Courts have recognized this limitation, stating that "an IP address exposed by a wireless router might be used by the subscriber paying for the address, but it might not. Roommates, housemates, neighbors, visitors, employees or others less welcome might also use the same address."[14]  In fact, one copyright troll plaintiff has admitted that an estimated "30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material."[15]

>    **B.      Malibu Media's Business**

Traditionally, "copyright troll" refers to "a non-producer who merely has acquired the right to bring lawsuits against alleged infringers" and threatens to file copyright infringement claims in order to induce rapid settlements against large groups of anonymous defendants without the intention of proceeding to trial on the merits.[16] Unlike traditional copyright trolls, Malibu Media actually produces the soft-core pornographic films that it copyrights. However, like traditional copyright trolls, Malibu Media has implemented the strategy of producing extensive revenue not by marketing and selling its lawfully copyrighted pornographic videos, but rather by extracting nuisance settlements from individuals who reasonably do not want their names associated with pornography.

---

[13]   *Id.*

[14]   *Discount Video Ctr., Inc. D/B/A Mayhem v. Does 1-5041*, No. 11-cv-02694 CW (PSG) (N.D. Cal. Sept. 23, 2011), *available at* https://www.eff.org/files/MayhemOrder.pdf (last visited Feb. 5, 2014) (Order of U.S. Magistrate Judge Paul S. Grewal).

[15]   *Digital Sins, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012).

[16]   Curran, 13 J. MARSHALL REV. INTELL. PROP. L. at 172 (quoting *Malibu Media, LLC v. Does*, No. 12-2078, 2013 WL 3038025, at *1-2 (E.D. Pa. June 18, 2013) (emphasizing that a copyright troll is traditionally defined as a non-producer who has acquired the right to bring lawsuits against alleged copyright infringers).

In 2012, Malibu Media filed over 360 copyright infringement lawsuits against approximately 6,000 individuals.[17] Unlike the traditional copyright trolls, instead of alleging infringement of a single copyright, Malibu Media targets primarily the "persistent infringers," *i.e.*, those who have allegedly illegally downloaded and/or distributed more than one of Malibu Media's videos. In this manner Malibu Media gains bargaining power due to the risk of exorbitant statutory damages and thereby extracts larger settlements from alleged infringers, reportedly between $7,500 and $13,500.[18] In fact, undersigned counsel is personally aware of one putative defendant who chose to contact counsel for Malibu Media and offer to settle the matter rather than expend any attorney's fees to quash the subpoena even though she had not downloaded or transmitted the allegedly infringed copyrighted materials.

Malibu Media employs an investigator, IPP International UG, who establishes "a direct TCP/IP connection" with a potential defendant's IP address.[19] IPP International UG then confirms *via* this direct connection that the potential defendant's electronic device contains the copyrighted files in question, or portions thereof, by downloading from the potential defendant portions of the copyrighted digital movie files.[20] However, as an IP address itself cannot hold such files, what Malibu Media and IPP International UG are actually doing is accessing each potential defendant's device without that person's knowledge or permission.[21]

---

[17]   Curran, 13 J. MARSHALL REV. INTELL. PROP. L. at 188 (citing *Malibu Media's Massive Fraud*, FIGHT COPYRIGHT TROLLS (Nov. 10, 2012), http://fightcopyrighttrolls.com/2012/11/10/malibu-medias-massive-fraud/ (last visited Feb. 5, 2014)).

[18]   *Id.* at 190.

[19]   Compl. ¶ 18.

[20]   *See id.* ¶¶ 19, 22.

[21]   *See* Part E *supra*.

### C.      The Procedural Posture of this Motion

On November 15, 2013, Malibu Media filed the Complaint in this matter [ECF. 1], naming as Defendant John Doe subscriber assigned internet protocol address 98.218.21.63. That same day, Malibu Media filed a Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference (the "Motion to Expedite Discovery") [ECF. 4]. The Court granted Malibu Media's Motion to Expedite Discovery on November 19, 2013 [ECF. 6].

Pursuant to the Court's Order granting the Motion to Expedite Discovery, Malibu Media served the Subpoena on Comcast. Comcast, in turn, sent a letter to John Doe, notifying him that he is the putative defendant in this matter and giving him thirty days to respond to the Subpoena. On January 2, 2014, John Doe filed a Motion for Extension of Time [ECF. 8], seeking until February 5, 2014 to move to quash or otherwise reply to the Subpoena.[22] One of the reasons put forth by John Doe in support of the Motion for Extension of Time is that John Doe's computer forensic expert required additional time to properly inspect John Doe's computer for the infringing material. Now that such inspection has been completed, John Doe moves to quash the Subpoena in its entirety, or in the alternative for a protective order forbidding disclosure of his identity and contact information.

### D.      About John Doe

John Doe is a married man and resides in Maryland with his wife of nearly thirty years. *See* Redacted Aff. of John Doe, ¶ 1, attached hereto as **Exhibit B**.[23] He and his wife live in a large townhouse complex with multiple units. *Id.* ¶ 8. Their townhouse is a middle unit, sandwiched between two other townhouses. *Id.* As such, John Doe's wireless router, which upon

---

[22]   The Court granted John Doe's Motion for Extension of Time the very day it was filed. [ECF. 9]

[23]   The Notice of Filing of Document Under Seal, which is a placeholder for the Unredacted Affidavit of John Doe, is attached hereto as **Exhibit C**.

information and belief was unsecured, *id.*, could be accessed by anyone within range of the signal.

John Doe is the father of two grown children and a grandfather. *Id.* ¶ 1. He works full time in a factory doing shift work and is nearing retirement age. *Id* ¶ 2. John Doe is an active member of his community church. *See id.* ¶ 3. Along with his wife and other members of the church, John Doe regularly volunteers at a local homeless shelter. *Id.* He is also a caregiver for a terminally ill, disabled individual who he takes to therapy a least twice a week in the mornings. *Id.* John Doe has limited financial resources, *id.* ¶ 2, and having to protect himself and his family from the harm associated with this frivolous lawsuit has already taxed his family finances.

John Doe vehemently denies the allegations in the Complaint regarding copyright infringement of pornographic materials. *See id.* ¶ 7. He never downloaded the BitTorrent file-sharing protocol. *Id.* ¶ 9. Further, to the best of his information and belief, John Does has <u>never</u> transmitted even a portion of Malibu Media's copyrighted videos *via* BitTorrent or any other peer-to-peer file sharing system. *Id.* ¶ 10.

### E.    A Computer Forensic Expert Thoroughly Inspected John Doe's Computer and Found No Evidence of the Infringing Files

John Doe's denial of liability has been confirmed by Steven S. Stern, an independent computer forensic expert. *See generally* Aff. of Steven S. Stern, attached hereto as **Exhibit D**. Mr. Stern is a managing member of Safe Harbor Discovery, LLC ("SHD"). *Id.* ¶ 1. SHD is a computer forensic consulting and services firm based here in Maryland. *Id.* ¶ 2. Law firms regularly retain SHD during litigation to assist with the identification, collection, analysis, and production of electronic data. *Id.* On December 30, 2013, undersigned counsel retained Mr. Stern to perform computer forensic and investigative services on behalf of John Doe. *Id.* ¶ 4. Specifically, undersigned counsel engaged Mr. Stern to determine whether John Doe ever

downloaded or otherwise transmitted the copyrighted materials that make up the crux of this copyright infringement lawsuit.

Mr. Stern took possession of John Doe's sole computer, a Hewlett Packard desktop computer (the "HP Computer"). *Id.* ¶¶ 9, 11. In order to preserve evidence, Mr. Stern made a forensically sound image of the HP Computer's hard drive. *Id.* ¶ 12. Mr. Stern and an associate then processed the files on the drive, created a file index, and created a hash code index. *Id.* ¶ 13.

Upon completion of processing, Mr. Stern and his associate searched for each file name listed in the Exhibits to the Complaint. *Id.* ¶ 14. They found absolutely no evidence of any of the allegedly infringed files on the HP Computer. *See id.* Mr. Stern and his associate further searched for each hash code listed in Exhibit A to the Complaint. *Id.* ¶ 15. They similarly found absolutely no evidence of any of the allegedly infringed file has codes on the HP Computer. *See id.* Finally, Mr. Stern and his associate performed a basic search for Torrent file types because the Complaint alleged that BitTorrent was the method of file download and transmission. *Id.* ¶ 16. Again, they found absolutely no evidence of any Torrent files matching or nearly matching the allegedly infringed files. *See id.*

Mr. Stern has concluded that "John Doe does not possess the files in question." *Id.* ¶ 18. Further, Mr. Stern found "no evidence that John Doe's HP Computer had been tampered with, or that any erasure programs or software had been utilized." *Id.* ¶ 17. In other words, not only are the copyrighted files not on John Doe's computer, but they were ***never*** on his computer.  Mr. Stern has further concluded that the fact that John Doe's wireless router was unsecured and the fact that John Doe's HP Computer is his sole computing device, "makes the potential for John Doe to be the actual person(s) responsible for the alleged infringement highly unlikely . . . ." *Id.* ¶ 21.

Moreover, Mr. Stern has reason to believe that Malibu Media, through its investigator IPP International UG, accessed John Doe's computer without John Doe's knowledge or permission. *See id.* ¶ 20. As detailed by Malibu Media in the Complaint, IPP International established "a direct TCP/IP connection" with John Doe's IP address. (Compl. ¶ 18.) Malibu Media further contends that IPP International UG then confirmed *via* this direct connection, that John Doe's electronic device in fact contained the copyrighted files in question or portions thereof. *See id.* ¶¶ 19, 22. However, as Mr. Stern explains in his Affidavit, an IP address cannot itself hold files; it merely represents the IP address via which content is delivered to a device. Ex. D, ¶ 20. Thus, Mr. Stern concludes that Malibu Media "is clearly stating that [it] and or [IPP International UG] accessed John Doe's electronic device without John Doe's knowledge or permission." *Id.*

## ARGUMENT

### I.   THE COURT SHOULD QUASH THE SUBPOENA IN ITS ENTIRETY BECAUSE IT SEEKS PRIVILEGED OR PROTECTED INFORMATION.

This case is just another in a wave of lawsuits filed by Malibu Media in Maryland (and around the country) in which it seeks to "tag" a defendant based solely on an IP address. However, an IP address is not equivalent to a person or entity. It is not a fingerprint or DNA evidence—indeed, far from it. In a remarkably similar case in which an entertainment producer also sought expedited discovery to learn the identity of persons "associated with" IP addresses, United States District Judge Harold Baker of the Central District of Illinois denied motions for expedited discovery and reconsideration, noting that "IP subscribers are not necessarily copyright infringers . . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *VPR Internationale v. Does 1-1017*, No. 11-2068, 2011 WL 8179128, at *1-2 (C.D.

Ill. Apr. 29, 2011). The point so aptly made by Judge Baker is that there may or may not be a correlation between the individual subscriber, the IP address, and the infringing activity. The risk of false identification by ISPs based on IP address is vividly illustrated by Judge Baker when he describes a raid by federal agents on a home allegedly linked to downloaded child pornography. *See* 2011 WL 8179128, at *1. The identity and location of the subscriber were provided by the ISP (in the same fashion that Malibu Media seeks to extract such information from Comcast.) *See id.* After the raid revealed no child pornography on the family computers (including iPhones and iPads), federal agents realized they had raided the wrong home. *See id.* The downloaded child pornography was traced to a neighbor who had used multiple ISP subscribers' wireless internet connections. *See id.* This risk of false identification and false accusation through disclosure of identities of internet subscribers is also present here. Given the nature of the allegations and the material in question, should this Court force Comcast to turn over John Doe's identity and contact information, John Doe would suffer untold reputational injury, harassment, and embarrassment.

Rule 45 provides that a "court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . ." FED. R. CIV. P. 45(c)(3)(A)(iii). Under these circumstances, John Doe's identity is privileged or otherwise protected information and the Subpoena to Comcast should be quashed.  Although John Doe's identity may not be privileged in other circumstances (such as when there is an identifiable link between the Doe defendant and the alleged wrongful conduct), here, where there is irrefutable evidence that John Doe did not commit the alleged copyright infringement, and where there is such a high risk of harm, John Doe has a legitimate expectation of privacy in his identity and Malibu Media should be precluded from further harassing John Doe.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD ENTER A PROTECTIVE ORDER FORBIDDING THE DISCLOSURE OF JOHN DOE'S IDENTITY AND CONTACT INFORMATION.

In the alternative, Rule 26 provides a basis for this Court to enter a protective order forbidding the disclosure of John Doe's identity and contact information. *See* FED. R. CIV. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . .")

There are absolutely no facts in the Complaint that connect John Doe to the infringing activity alleged. In other words, it is only because John Doe is the named Comcast account holder that his identity will be revealed even though John Doe is not necessarily the person who was using the IP address at the time the alleged infringing activity occurred. With such a speculative and tenuous connection between Malibu Media's allegations and John Doe, the consequence of Comcast's compliance with the Subpoena weighs in favor of quashing the subpoena. Given that none of the allegedly infringing materials were ***ever*** on John Doe's computer, Malibu Media is seeking information that is wholly irrelevant to its claim. The only reason Malibu Media could possibly need access to John Doe's identity and contact information at this point, would be to coerce him into a settlement he might agree to simply to make this matter disappear and avoid incurring additional attorney's fees.

If the mere act of having an internet address can link a subscriber to copyright infringement suits, no internet subscriber is safe from reputational injury, harassment, and/or embarrassment. As Judge Baker noted, "whether you're guilty or not, you look like a suspect." *VPR Internationale*, 2011 WL 8179128, at *3. In a case such as this, where the putative defendant has conclusive evidence that he did not commit the infringement at issue, the court

13

should not allow Malibu Media to drag John Doe's name and reputation through the mud by associating his name with the spurious allegations contained in the Complaint.

## III.   THE COURT SHOULD AWARD COSTS AND ATTORNEY'S FEES HEREIN.

Should the court agree with John Doe and quash the Subpoena to Comcast, both Rule 54 of the Federal Rules of Civil Procedure and the Copyright Act entitle John Doe to an award of costs and attorney's fees herein. *See* FED. R. CIV. P. 54(d); 17 U.S.C. § 505. Rule 54 provides, in pertinent part, as follows:

> **(d)  COSTS; ATTORNEY'S FEES.**
>
> (1)  *Costs Other Than Attorney's Fees.*  Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. [. . .] The clerk may tax costs on 14 days' notice.  On motion served within the next 7 days, the court may review the clerk's action.
>
> (2)  *Attorney's Fees.*
>
>> (A)  *Claim to Be by Motion.*  A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>>
>> (B)  *Timing and Contents of the Motion.*  Unless a statute or a court order provides otherwise, the motion must:
>>
>>> (i) be filed no later than 14 days after the entry of judgment;
>>>
>>> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>>>
>>> (iii) state the amount sought or provide a fair estimate of it; and
>>>
>>> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

FED. R. CIV. P. 54(d).  The Copyright Act further provides for an award of costs and attorney's fees herein, stating:

### § 505  Remedies for infringement:  Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

### A.    John Doe Is Entitled to an Award of Costs.

John Doe is entitled to recover his costs associated with defending against this suit pursuant to both Rule 54 and § 505 of the Copyright Act. Under Rule 54(d)(1), the prevailing party is entitled to an award of costs in the ordinary course. *See Wyne v. Medo Indus., Inc.* 329 F. Supp. 2d 584, 586 (D. Md. 2004) (citing *Constantino v. Am. S/T Achilles*, 580 F.2d 121, 123 (4th Cir. 1978). Indeed, the rule gives rise to a "presumption that costs are to be awarded to the prevailing party." *Id.* (quoting *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999)). Moreover, the United States Court of Appeals for the Fourth Circuit has stated that the district court "may not depart from the normal practice of awarding fees to the prevailing party [who has requested costs] without first articulating some good reason for doing so." *Id.* (quoting *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990)).

Those expenses which may be taxed under Rule 54(d)(1) and § 505 of the Copyright Act are delineated in 28 U.S.C. § 1920[24] and include expert fees. *See* 28 U.S.C. § 1920(3). In defending against this frivolous suit, John Doe has incurred expert costs and expenses in excess

---

[24]    Under section 1920, a trial court may tax as costs the following:
  (1) Fees of the clerk and marshall;
  (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
  (3) Fees and disbursements for printing and witnesses;
  (4) Fees and disbursements for exemplification and copies of papers necessarily obtained for use in the case;
  (5) Docket fees under Section 1923.

of $7,500. *See* Ex. C ¶ 19. Therefore, John Doe requests that this Court grant him an award of costs in the amount of $7,500.00.

**B.** **John Doe Is Entitled to an Award of Attorney's Fees.**

Under the "American Rule," a "prevailing party is not awarded attorney's fees unless . . . there is a statute that allows the imposition of such fees . . . ." *Bird Realty Ltd. P'ship v. Jiffy Lube Int'l, Inc.*, No. ELH-12-1104, 2013 WL 4525266, at *4 (D. Md. Aug. 23, 2013) (Hollander, J.) (awarding attorney's fees to prevailing party). Section 505 of the Copyright Act specifically contemplates an award of attorney's fees to the prevailing party. *See* 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the prevailing party as part of the costs"). The Supreme Court has confirmed that prevailing plaintiffs and prevailing defendants must be treated alike under § 505. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Further, the Supreme Court has defined "prevailing party" in the fee-shifting context to mean a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Allora, LLC v. Cambridge Builders of Johnston Cty., Inc.*, 532 Fed. Appx. 349, 351 (4th Cir. July 9, 2013) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). In *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir. 1993), the Fourth Circuit adopted a four-factor test to guide the district courts in determining whether to award attorney's fees and costs to a prevailing party under § 505:

(1)  The motivation of the parties;

(2)  The objective reasonableness of the legal and factual positions advanced;

(3)  The need in particular circumstances to advance considerations of compensation and deterrence; and

(4)  Any other relevant factor presented.

*See Rosciszewski*, 1 F.3d at 234 (cited by *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir. 1994) (holding that the district court erred in refusing to award attorneys' fees and costs to the prevailing party).

Application of the factors set forth in *Rosciszewski* to the facts of this case leads to the conclusion that this Court should award John Doe reasonable attorney's fees and costs incurred in defending against Malibu Media's suit. With respect to the first factor, there is ample evidence of bad faith on the party of Malibu Media. It has been chronicled and extensively documented that the primary purpose of these lawsuits is to extort settlements from individuals who, generally, are not guilty of the alleged copyright infringement. Second, regarding the objective reasonableness of the parties' contentions, there is also ample evidence that Malibu Media's infringement action was without merit. Third, John Doe has incurred expense and financial hardship in defending against this lawsuit. Further, the goal of deterring Malibu Media from pursuing similar frivolous lawsuits is furthered by the imposition of attorney's fees and costs here. Fourth, this Court may consider additional factors, such as the fact that there is ***absolutely no*** evidence of the infringing material on John Doe's computer, and there never was; that Malibu Media has only ever taken one of these cases to trial; and that one judge observed in another of these cases that "Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material." *Digital Sins, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (Nathan, J.) (entering protective order pursuant to which the plaintiff was permitted to subpoena ISP). All of these factors fall in John Doe's favor. Accordingly, John Doe requests that this Court award attorney's fees and costs

associated with defending against this lawsuit, to be paid by Plaintiff Malibu Media and its counsel herein.[25]

## **CONCLUSION**

WHEREFORE, Defendant John Doe respectfully requests that this Court enter an Order quashing the Subpoena issued to Comcast, or in the alternative entering a protective order forbidding the disclosure of John Doe's identity and contact information, and awarding John Doe the costs and attorney's fees incurred herein, and such other and further relief as the Court deems just and proper. A proposed Order is attached.

Dated: February 5, 2014                                     Respectfully submitted,

                                                                        /s/
                                                            Anne T. McKenna, Fed. Bar No. 23270
                                                            SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
                                                            201 N. Charles Street, Suite 2600
                                                            Baltimore, Maryland 21201
                                                            Tel:    (410) 385-2225
                                                            Fax:    (410) 547-2432
                                                            amckenna@silvermckenna.com

                                                            *Counsel for Defendant, John Doe subscriber
                                                            assigned IP address 98.218.21.63*

---

[25] Pursuant to Rule 54 and Local Rule 109(1), undersigned counsel will file with the court within fourteen (14) days of the entry of judgment hereon a bill of costs and proof of attorney's fees.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 5th day of February, 2014, a copy of Defendant John Doe's Motion to Quash Subpoena or In the Alternative For a Protective Order and For Costs and Attorney's Fees was filed electronically with the clerk of the United States District Court for the District of Maryland *via* the court's Case Management/Electronic Case Filing system, and was served upon the following counsel of record:

    Jon A. Hoppe, Esq.
    Maddox, Hoppe, Hoofnagle & Hafey, L.L.C.
    1401 Mercantile Lane # 105
    Largo, Maryland 10774


                                        /s/
                                 Anne T. McKenna